IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| LeRoy K. Wheeler, ) | |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| Warden James Sayler, et al., ) | Case No. 1:22-cv-038 |
| ) | |
| Defendant. ) | |

Plaintiff LeRoy K. Wheeler's ("Wheeler") has filed an Amended Complaint. In addition to reiterating the claims contained his original Complaint, he requests court-appointed counsel. The Court has referred this matter to the undersigned for initial review pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the undersigned recommends that Wheeler's request for court-appointed counsel be denied and that this action be dismissed for failure to state claims for which relief may be granted.

## I.   BACKGROUND

Wheeler is an inmate at the North Dakota State Penitentiary ("NDSP"). He initiated this action pro se with the filing of a paid Complaint on February 8, 2022. The undersigned screened his Complaint and, finding it wanting, issued an order on February 21, 2023, giving him an opportunity to show cause why his Complaint should not be dismissed or to file an Amended Complaint. (Doc. No. 6).

On March 10, 2023, Wheeler filed an Amended Complaint. According to the Amended Complaint, he sent certified letters with return receipts requested to ABC News, Fox News, and NBC News in the summer of 2021. He received a signed return receipt (but apparently no

1

substantive response) from Fox News. He did not receive signed return receipts or substantive responses from either ABC News or NBC News. He wrote to Tracy Harter, the United States Postal Service's postmaster in Bismarck, North Dakota, asking how certified mail is supposed to work but received no response. Believing that he did receive return receipts or substantive responses to his correspondence because of tampering and/or censorship of his mail by NDSP staff, he filed multiple grievances. His grievances were denied with the explanation that the North Dakota Department of Corrections and Rehabilitation had no control over return receipts and that there was no evidence that his certified mail had been mishandled, tampered with, interfered with, or censored.

Dissatisfied with the responses to his grievances, Wheeler initiated the above-captioned action. He is suing the following individuals in their official and individual capacities: James Sayler, the NDSP's former Warden; Tammy Homan, an individual at the NDSP who apparently processes prisoner mail; Tracy Harter, Postmaster for the United States Postal Service in Bismarck, North Dakota; Captain Flanagan; Tracy Fischer, a unit manager at the NDSP; Dave Krabbenhoft, Director of the North Dakota Department of Corrections and Rehabilitation; and an unnamed NDSP employee who Wheeler refers to as John/Jane Doe. He claims that they censored and/or restricted the "free flow" of his certified mail in violation of his First Amendment rights and denied him due process in violation of the Fourteenth Amendment rights. He requests injunctive relief, reimbursement for his costs and expenses, and an award of punitive damages.

## II.   STANDARD GOVERNING INITIAL REVIEW

The Prison Litigation Reform Act of 1995 ("PLRA") requires an initial court screening of all civil actions brought by prisoners that relate to prison conditions or that seek redress from a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The screening is required even

when the prisoner has paid the filing fee. Lewis v. Estes, Case No. 00–1304, 242 F.3d 375 (table); 2000 WL 1673382, at *1 (8th Cir. Nov. 8, 2000) (unpublished *per curiam*). The purpose of the screening requirement is to weed out claims that clearly lack merit with the hope that this will help to lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). In conducting the screening, the court must dismiss a complaint or portion thereof if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555). And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell

3

Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992). Even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-54 (7th Cir. 2002).

### III. DISCUSSION

#### A. Wheeler's Request for Court-Appointed Counsel

As noted above, Wheeler's Amended Complaint includes a request for court-appointed counsel. (Doc. No. 10).

Indigent civil litigants do not have a constitutional or statutory right to appointed counsel let alone the appointment of their choice of counsel. Ward v. Smith, 721 F.3d 940, 942 (8th Cir. 2013). The court "may request an attorney to represent any person unable to afford counsel" and has considerable discretion when deciding whether to do so. Id. at 924-43 (quoting 28 U.S.C. § 1915(e)(1)). A number of factors are relevant when deciding whether to appoint counsel, including "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the

legal issues." Abdullah v. Gunter, 949 F.2d 1032, 1035 (8th Cir. 1991). Appointment of counsel should be given serious consideration if the plaintiff has not alleged a frivolous or malicious claim. Id.

Having reviewed the record in conjunction with the factors identified by the Eighth Circuit in Abdullah, the undersigned recommends that the court deny Wheeler's request for court appointed counsel. First, this matter is neither factually nor legally complex. Second, Wheeler has demonstrated an ability to present his claims and is an experienced litigant. Third, there is nothing in the record to suggest that Wheeler is otherwise lacking legal resources. The undersigned shall move on to the initial screening of Wheeler's claims against Harter.

### B. Wheeler's Claim against Harter

Because Harter is employed by an enterprise operated by the federal government, the United States Postal Service ("USPS"), she can be considered a federal official as opposed to a state actor. Consequently, the court construes Wheeler's putative claim against Harter as a Bivens claim. See Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971); see also Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) ("A Bivens action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights.").

A Bivens claim for money damages may not be brought against the United States, federal agencies, or federal agent in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (confirming that under Bivens, a "direct action against the Government [is] not available," and further declining to recognize a "Bivens-type cause of action directly against a federal agency"); Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other

5

than name, to be treated as a suit against the entity"); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (a Bivens action "must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action for money damages against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived.").[1] As a suit against Harter in her official capacity is akin to a suit against the United States, Wheeler's claim for monetary damages against Harter in her official is barred under the doctrine of sovereign immunity.

Regardless of the capacity in which Wheeler is endeavoring to sue Harter, his claim against Harter is frivolous on its face. See Cotten v. Schotten, No. 95-4085, 1997 WL 299386 at * 1 (6th Cir. June 4, 1997) ("[T]here is no constitutional right to receive a return receipt in the mail."). The basis for Wheeler's claim against Harter is that she did not respond to his correspondence and that he suffered physical injury as a result. Specifically, Wheeler alleges:

> Tracey Harter, Bismarck Postmaster, tacitly authorizes and condones or acquiesence, the total censorship mentioned above, by refusing to respond to Wheeler's questions about the certified mail process and who stamps the return receipt, the USPS employee, & who is responsible to complete the return receipt (Green Card), even though a response was requested on both the 7-08-21 & 7-26-21 correspondences, and pre-paid return postage was provided. Harter was notified that a Postal Service, provided by the USPS & federal law to a state prisoner, LeRoy K. Wheeler, was a complete failure, that certified mail option was sold to Wheeler, on multiple occasions, & the return receipts, both white & green, where not being returned as the service required. Its just bad business to sell a service & refuse to provide it, mail fraud. Harter is the supervisor & has failed to properly train & supervise Harters subordinates, even after notice, because its still happening in 2023, & by failing to

---

[1] The USPS is immune from suit for the loss, miscarriage, or negligent transmission of letters or postal matter. See 28 U.S.C. § 2680(b) (postal matter exception to the Federal Tort Claims Act).

> respond to Wheeler's demand to correct these issues shows deliberate indifference to Wheeler's rights and is tacitly authorizing the intentional acts that deprive W of his rights to communicate through the mail, through a service that is supposed to guarantee the mail gets to where it is supposed to go.

(Doc. No. 6) (errors in original).

The purported poor customer service of the USPS and a failure on Harter's part to respond to Wheeler's letter is not tantamount to a violation of Wheeler's First Amendment rights and does not constitute the basis for a cognizable Bivens claim against Harter. Wheeler does not have a right under the First Amendment to compel a response from Harter. As for Wheeler's assertion that Harter authorized or condoned the alleged censorship of his mail by NDSP staff, it is, frankly, absurd. Harter has no authority and control over NDSP staff. Consequently, the alleged actions of staff cannot be logically attributed to her. In any event, it is well-settled that theories of vicarious liability cannot support a Bivens action. See e.g., Webb v. Hedrick, 409 F. App'x 33, 35 (8th Cir. 2010) ("Bivens liability cannot be established solely on a theory of respondeat superior.").

The court is convinced that Wheeler has presented the best case he could have under the circumstances against Harter, and that further amendment of the pleadings as they pertain to Harter would serve no useful purpose. Accepting all of Wheeler's allegations as true as they pertain to Harter, the court can conclude that Wheeler has failed to state a claim against Harter for which relief may be granted and that Wheeler's claim against Harter is otherwise frivolous on its face. Consequently, the court should dismiss Wheeler's claim against Harter with prejudice. The undersigned shall turn to Wheeler's claims against Homan, Flanagan, Fisher, Sayler, and Doe (collectively the "State Defendants").

      **C.**      **Wheeler's Claims Against the State Defendants**

The court construes Wheeler's claims against the State Defendants as § 1983 claims. Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. Nelson v. Campbell, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Official Capacity Claims for Damages

As a preliminary matter, the court finds that Wheeler's claim for damages against State Defendants in their official capacities is barred. First, state officials sued in their official capacities for money damages are not "person[s]" subject to suit under § 1983." See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Second, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. Id.; Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Consequently, Wheeler's claim for monetary damages against Defendants in their official capacities should be dismissed.

### 2. Individual Capacity Claims for Injunctive Relief

Wheeler's claim for injunctive relief against Defendants in their individual capacities should also be dismissed as it is well-settled that a plaintiff cannot, in the context of § 1983 action, maintain a claim for injunctive relief against defendants in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 30 (1991) (under Section 1983, plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief); Brown v. Montoya, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) (same). The undersigned shall now move on to address the

substance of Wheeler's First Amendment claim.

### 3. Claim No. 1 - First Amendment

A prisoner retains First Amendment protections to send and receive mail, but that right may be restricted for legitimate penological reasons. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987); Moore v. Schuetzle, 354 F. Supp. 2d 1065, 1078 (D.N.D. 2005), aff'd, 172 F. App'x 133 (8th Cir. 2006). With regard to non-legal incoming mail, a prison's regulations or practices affecting a prisoner's receipt of non-legal mail must be reasonably related to a legitimate penological interest. In order to state a claim for interference with incoming non-legal mail, the inmate will have to show a pattern and practice of interference rather than showing an isolated incident without the legitimate penological interest. See Davis v. Goord, 320 F.3d 346, 351 (2nd Cir. 2003) (finding isolated incidents of mail tampering insufficient to state a constitutional claim).

#### a. Homan

Wheeler surmises that he did not receive return receipts for all of his certified letters because Homan restricted, tampered with, or otherwise confiscated his certified letters in violation of his First Amendment rights. Specifically, he alleges:

> Tammy Homan, mail personnel is enforcing a de facto total plan on plaintiffs, LeRoy K. Wheeler (Wheeler)'s, 1st Amendment right of free speech to communicate with those outside prison that includes the news media through certified mail, a right under 28 CFR § 540.22(a)(c), to ABC News on 7-26-21, and again on 8-9-21, to Fox News on 7-19-21, (someone taped something over the Fox News address & when it was returned whatever it was removed & peeled off part of the intended address on the Green Card) most likely sent to a wrong address intentionally and I still governmental interference. Then to NBC News on 8-11-21, the signed return receipts were requested & never returned (except for the Fox News one), and no responses were ever received, though requested & return postage paid for. (even if officials communicated with the intended recipients by mail, phone or in person to inhibit any response to Wheeler is still Governmental interference). Then by regular

9

> mail to Bismarck Postmaster, Tracey Harter, on 7-8-21, & also by Certified Mail on 7-26-21, & no responses were ever received. This censorship includes to Attorney's on 11-2-20 & 11-18-21, & even to President of the U.S., Biden on 5-17-21, an on going practice for many years, without any penological purpose involved, & also to maintain these policies &/or practices that produces this result. This suppression of expression prevents Wheeler from doing any further investigation, (even personal mail disappears if they don't like the content), or collecting any more information in any of these circumstances, in this whole complaint, & violates 1st & 14th Amendment rights under the U.S. Constitution, and 18 U.S.C. 1341, 1346, 1702, & 1708, these laws apply to all Defendants actions. NDSP mail staff offer certified mail when inmates complain their personal mail disappears, at a much higher price than regular mail, for a service that Homan never intends to fulfill, Governmental overreach, thus deprives Wheeler of his property without due process of law without any state post deprivation remedy. Homan offers only conclusory statements & blames USPS for the failure.

(Doc. No. 8) (errors in original). He claims to have suffered a physical injury as a result Homan's actions.

The undersigned concludes that Wheeler has failed to state a cognizable claim against Homan. First, Wheeler's assertion that he has suffered a physical injury gives his claim an air of frivolity. Second, Wheeler's assertion that he has been effectively banned from communicating with the press is undermined by his acknowledgment that he received a return receipt from Fox News. The Court is not required to ignore facts that are pled by Wheeler when they undermine his claim. Rather, the court may accept as true all facts pled in the complaint and conclude from them Wheeler has stated no claim against Homan as a matter of law. Third, it appears on the face of the complaint that incidents about which Homan complains–three instances when he did not receive a return receipt–appear isolated. As noted above, isolated incidents of mail tampering are insufficient to state a constitutional claim. See Davis, 320 F.3d at 351; see also Sanderson v. Lopez, No. 4:17CV00174 JLH/PSH, 2017 WL 4020428, at *2 (E.D. Ark. Aug. 21, 2017) ("Neither an isolated incidence of mail tampering nor short delays in receiving mail violate a prisoner's First Amendment

10

right of free speech to send and receive mail."); Gillard v. Burge, No. 9:03-CV-1537 TJM/RFT, 2007 WL 1074789, at *8 (N.D.N.Y. Apr. 5, 2007) ("In order to state a claim for interference with incoming non-legal mail, the inmate will have to show a pattern and practice of interference, rather than merely showing an isolated incident, without the legitimate penological interest.").

Wheeler, in a attempt to demonstrate an existence of a pattern, alludes to three additional pieces of mail he sent to attorneys and/or to President Biden between November 2020 and November 2021. The undersigned simply notes that the pleadings do not indicate that the aforementioned correspondence to attorneys and President Biden were sent via certified mail.

### b. Flanagan, Fischer, Sayler, and Krabbenhoft

Wheeler's claim against Flanagan, Fischer, Sayler, and Krabbenhoft is predicated upon their adoption, ratification, and acquiescence to Homan's violation of his First Amendment rights insofar as they failed to adequately investigate his grievances, failed to respond to his grievances, or otherwise denied his grievances.

There is no constitutionally created entitlement to grievance procedures or access to any such procedures voluntarily established by a state. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by the prisoner); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curium) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (opining that the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state); see e.g., Dickens v. Taylor, 464 F. Supp.2d 341, 354 (D. Del.

2006) (concluding that a prisoner "cannot maintain constitutional claims based upon an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed."). It therefore follows that Wheeler cannot maintain a claim against Flanagan, Fischer, Sayler, and Krabbenhoft for their denial of their grievances or for their alleged failure to act. See Cotten, No. 95-4085, 1997 WL 299386 at * 1 (finding frivolous a prisoner's claim predicated upon prison officials', postmasters', and a prosecutor's alleged failure to investigate after prisoner did not receive a return receipt card in the mail); Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (finding that a plaintiff failed to state First Amendment claims relating to his grievances "because defendants' denial of his grievances did not state a substantive constitutional claim."); see also Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983." (internal quotation marks omitted)); Alder v. Corr. Med. Servs., 73 F. App'x 839, 841 (6th Cir.2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); Lee v. Mich. Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant was denied an administrative grievance or failed to act based upon information contained in a grievance."); Simpson v. Overton, 79 F. App'x 117, 120 (6th Cir.2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Moreover, Wheeler cannot maintain a claim against Krabbenhoft, Fischer, Flanagan, or Sayler in their personal capacity as supervisors. See Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (there is no respondeat superior liability under § 1983); see also Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is

insufficient to establish the personal involvement required to support liability.").

### c. John/Jane Doe

Wheeler claims that John/Jane Doe denied him his First Amendment rights by either advising Harter not to respond to his inquiries or, in the alternative, by altering his correspondence to Harter. Specifically, he asserts:

> There is an employee at NDSP, Jane or John Doe, involved in the Postmaster Tracey Harter, delivery of the certified mail because, although the Green Card was signed and returned it was not sent through the USPS Postal machinery to put marks on the card when its processed and the tracking number was never listed in the tracking information. [1] It must have been hand delivered, got signed, and returned without any proof it was ever mailed by this Jane or John Doe, without any penological purpose and denying due process, & he or she probably told Harter not to respond, or altered the mail contents to the level Harter didn't know to respond or what to respond to, it still is mail interference & censorship if "Wheeler's" communication was not received by Harter, that ultimately deprived Wheeler of a direct communication from Harter personally, violating 1st Amendment rights, USCA.
>
> [1] The white receipt was never returned.

(Doc. No. 1) (footnote and errors in original).

Wheeler's assertions regarding John/Jane Doe are inconsistent with his assertions regarding Harter. It begs the question why is Wheeler asserting a claim against Harter if he believes that she did not receive his letters because of John/Jane Doe or that John/Jane Doe altered his letters so as to make them incomprehensible to her.

Regardless of this inconsistency, Wheeler's assertions regarding John/Jane Doe are not enough to raise a right of relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007). The notion that an anonymous NDSP staff member hand delivered Wheeler's certified letter to Fox News instead of posting it, collected the return receipt and brought it back to the NDSP for Wheeler, and then either took steps to prevent Harter from receiving Wheeler's

13

correspondence or otherwise convinced Harter not to respond to Wheeler's correspondence borders on the fantastic. See e.g, Every v. Jindal, No. 09-CV-671, 2011 WL 2182047, at *3 (W.D. La. May 13, 2011), report and recommendation adopted, No. 09-CV-671, 2011 WL 2182721 (W.D. La. June 3, 2011) (finding a prisoner's allegations of forged certified mail return cards to not only be conclusory, but borderline on the delusional).

Finally, if Wheeler cannot identify John/Jane Doe, his claims against him/her are subject to dismissal pursuant to Fed. R. Civ. P. 4(m). See Fed. R. Civ. P. 4(m) (if service of summons and complaint is not made within 120 days of filing complaint, the court, upon motion or its own initiative and after notice to plaintiff, shall dismiss action without prejudice as to that defendant, or direct that service be effected within specified time); see e.g., Lewis v. Pulaski Cnty. Sheriff's Off., No. 4:18-CV-00143-KGB, 2022 WL 990351, at *1 n.2 (E.D. Ark. Mar. 31, 2022) (dismissing plaintiffs' claims against unidentified John Doe defendants pursuant to Fed. R. Civ. P. 4(m)); Basham v. Harrison, No. 4:19-CV-4099, 2019 WL 5929275, at *3 (W.D. Ark. Nov. 12, 2019) (giving plaintiff 30 days to identify a John Doe Defendant before dismissing the claim against him without prejudice).

### 3.   Claim No. 2 - Due Process

Wheeler's second claim is that Homan denied him due process under the Fourteenth Amendment by violating the NDSP's mail policies and procedures. His stated basis for this claim is as follows:

> Wheeler was denied the due process of law without an penological purpose involved. Wheeler has a right to be free from mail censorship and the free flow of mail. 1st and 14th Amend. USC. If there is a good reason to reject the content of the mail, NDSP has a rejection of mail policy & Tammy Homan refused to use this policy she is denying Wheeler's due process rights to respond to any grounds to reject his mail being sent out, instead has altered the contents of Wheeler's mail that has resulted

14

> in Wheller not getting any responses from the recipients of the mail. Certified return receipt is supposed to guarantee Wheeler's mail was received by the intended recipient & has not been received because even the media would want to learn of Governmental corruption, as shown above.

(Doc. No. 1) (errors in original).

An internal NDSP policy does not create a constitutional right, nor does a prison official's failure to follow such a policy rise to the level of a § 1983 claim. See Kennedy v. Blankenship, 100 F.3d 640, 643 (8th Cir.1996) (no federal constitutional liberty interest in having state officers follow state law); see also Smith v. Rucker, 259 F.3d 933 (8th Cir. 2001) (per curiam) (inmate's allegation that prison officials violated his due process rights by failing to follow administrative regulations did not state a claim; the due process clause does not federalize state-law procedural requirements); Hughes v. Lee County Dist. Court, 9 F.3d 1366, 1367 (8th Cir. 1993) (assertion that state violated its own procedural guidelines does not state a federal claim); Valiant-Bey v. Morris, 829 F.2d 1441, 1444 n. 5 (8th Cir. 1987) (§ 1983 claim cannot be premised on violation of state regulation). Consequently, Homan's alleged failure to follow NDSP policy does not constitute the basis for cognizable constitutional claim.

    **4.  Claim No. 3 - Due Process**

Wheeler's third claim is that he was deprived of property–the money he spent on postage–without due process of law. He alleges:

> On all failed certified letter's Wheeler sent out (about 15), in claim #1, comes with a price of $6.95 each letter. Thus a deprivation of Wheeler's property interests without due process of law and no state law post deprivation remedy available, & no penological purpose involved. Tammy Homan takes credit for the deprivation & Wheeler did request a refund of all monies taken for his failed service of selling certified mail to Wheeler and was denied by all defendants & constitutes mail fraud under 18 U.S.C. 1341, 1346, 1702, & 1708 plus the 14th Amendment. 18 USC 1346 authorizes prosecution of Government officials, a right to plaintiffs. Wheeler also enclosed a postage stamp in each envelope to pay for a postage paid response form

15

the intended mail recipient to add to Wheeler's costs.

(Doc. No. 1) (errors in original).

Wheeler's claim appears to be frivolous on its face. Wheeler asserts that he was deprived of property without due process. However, throughout his complaint he discusses the process that he did receive as he references various responses to his grievances. For example, on page 13 of his amended complaint, he quotes Flanagan's responses to his grievances. On pages 14 and 15 he quotes Krabbenhoft's responses to his grievances.[2]

In regard to Wheeler's assertions regarding mail fraud, the undersigned simply notes that the criminal statutes to which he cites create no private right of action. Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 408 (8th Cir. 1999); see also Bondarenko v. Polounin, No. 4:21-CV-1442-JAR, 2022 WL 485267, at *2 (E.D. Mo. Feb. 17, 2022) (dismissing plaintiff's complaint on initial review as the mail tampering and mail fraud statutes on which his claims were based conferred no private right action); Pierre v. United States Postal Serv., No. 18-CV-7474 (MKB), 2019 WL 653154, at *3 (E.D.N.Y. Feb. 15, 2019) ("Because there is no private right of action under the statutes for mail fraud, 18 U.S.C. § 1341, and theft and obstruction of the mails, 18 U.S.C. § 1701 et seq., Plaintiff, as a private citizen, cannot enforce these federal criminal laws.").

## IV.    CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the court deny Wheeler's request for court-appointed counsel (Doc. No. 10). The undersigned further **RECOMMENDS** that the Court

---

[2] According to Wheeler, Krabbenhoft advised him when denying his various grievances that staff had been able to provide documentation and tracking information with respect to the certified mail he had sent to various news outlets. (Doc. No. 8 at p. 14-15). Wheeler's response to these statements is that his mail could still have been altered by staff and that there is no physical evidence that the mail ever left the NDSP. (Id.).

**DISMISS** above-captioned action in its entirety for the reasons articulated above.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), Wheeler shall have until June 23, 2023, to file objections to this Report and Recommendation and otherwise advise the Court whether he wants to proceed with this matter should the Court construe it a "civil action."  A failure on his part to timely file an appropriate objection may result in recommended action without further notice or opportunity to respond.

Dated this 5th day of June, 2023.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court